IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

PATRICIA L. BLODGETT,                         )
                                              )
              Plaintiff,                      )
                                              )
v.                                            )         CIVIL ACTION NO. 5:08-00284
                                              )
MICHAEL J. ASTRUE,                            )
Commissioner of Social Security,             )
                                              )
              Defendant.                      )

PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States

Magistrate Judge by Standing Order filed April 30, 2008, to consider the pleadings and evidence,

and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28

U.S.C. § 636(b)(1)(B). (Document No. 3.) Presently pending before the Court is Plaintiff's Motion

for Summary Judgment (Document No. 7.) and Defendant's Motion for Judgment on the Pleadings.

(Document No. 9.)

The Plaintiff, Patricia L. Blodgett (hereinafter referred to as "Claimant"), filed an application

for DIB on November 7, 2005, alleging disability as of March 1, 2005, due to being overweight,

high blood pressure, possible diabetes, severe pain in legs, eye problems, left leg blockage, stress,

swelling in ankle and legs, pain in both shoulders, and thyroid problems.[1] (Tr. at 28, 60-64, 78.) The

_____

[1] On her request for reconsideration, Claimant alleged the following additional disabling
impairments: pain in stomach, arm numbness, and fibromyalgia. (Tr. at 35, 135.)

claim was denied initially and upon reconsideration. (Tr. at 29-31, 35-37.) On January 17, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 40.) A hearing was held on September 25, 2007, before the Honorable Geraldine H. Page. (Tr. at 383-407.) On November 7, 2007, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 15-24.) The ALJ's decision became the final decision of the Commissioner on March 28, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-10.) On April 30, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.

2

20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (c) Rating the degree of functional limitation. (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

3

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

___

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, March 1, 2005. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from osteoarthritis, obesity, diabetes mellitus, shoulder tendonitis, fibromyalgia, and gastritis which were severe impairments. (Tr. at 17, Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 19, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work as follows:

5

> [C]laimant has the residual functional capacity to perform light work, i.e., lifting/carrying no more than 20 pounds occasionally, 10 pounds frequently; standing/walking no more than 6 hours in an 8 hour day; sitting no more than 6 hours in an 8 hour day with limited pushing and pulling with her lower extremities; occasional climbing, balancing, kneeling, crawling, stooping, crouching and reaching; with no exposure to unprotected heights, climbing ladder, ropes and scaffolds, hazardous machinery, temperature extremes, or environmental irritants.

(Tr. at 20, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as an office manager as Claimant performed the job and as performed in the national economy. (Tr. at 23-24, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant had not been under a disability from March 1, 2005, through the date of the decision. (Tr. at 24, Finding No. 7.) On this basis, benefits were denied. (Tr. at 24.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

6

Claimant's Background

Claimant was born on April 16, 1947, and was 60 years old at the time of the administrative hearing, September 25, 2007. (Tr. at 60, 386.) Claimant has a high school education and received a certificate of cosmetology. (Tr. at 82, 387.) In the past, she worked as an office manager. (Tr. at 78-80, 93-95, 402.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to find that Claimant neither suffered a severe psychiatric impairment nor had any work-related mental limitations. (Document No. 8 at 9-12.) In this regard, Claimant asserts that the ALJ "played doctor" in determining that Claimant suffered from no mental limitations and "rejected the only medical opinion of record in this regard." (Id. at 12.) Claimant further alleges that the Commissioner erred in two respects in assessing Claimant's residual functional capacity ("RFC"). (Document No. 8 at 12-17.) First, the ALJ failed to include in her RFC determination any limitations associated from Claimant's severe shoulder tendonitis. (Id. at 13.) Second, Claimant asserts that the ALJ failed to accord proper weight to the opinion of Claimant's treating physician, Dr. Klinestiver. (Id. at 13-17.) Finally, Claimant asserts that the ALJ failed to consider her severe impairments in combination with one another. (Document No. 8 at 18-19.)

The Commissioner asserts that substantial evidence supports the ALJ's decision that Claimant failed to meet her burden of showing that her alleged mental impairment significantly

limited her ability to perform basic work activities. (Document No. 9 at 12-15.) The Commissioner further asserts that Claimant "erroneously contends that the ALJ acted as a medical professional because there was no evidence to support her opinion and because she declined to accept Dr. Klinestiver's conclusory and unsupported report." (Id. at 15.) Regarding Dr. Klinestiver's report in assessing Claimant's RFC, the Commissioner asserts that contrary to Claimant's argument, his opinion was not entitled to great weight. (Id. at 16-20.) The Commissioner notes that the ALJ set forth particular reasons in her decision for not giving great weight to Dr. Klinestiver's opinion. (Id. at 16-19.) Finally, the Commissioner asserts that Claimant's argument that the ALJ failed to consider Claimant's impairments in combination with one another is baseless. (Id. at 19-20.) The Commissioner points out that the ALJ considered the combined effect of Claimant's impairments at the second, third, and fourth steps of the sequential evaluation process. (Id. at 20.) Accordingly, the Commissioner asserts that Claimant's arguments are without merit and that the ALJ's decision is supported by substantial evidence. (Id.)

1. Mental Impairment.

Claimant first alleges that the ALJ erred in not finding that Claimant suffered from a severe psychiatric impairment and had any work-related mental limitations. (Document No. 8 at 9-10.) She notes her testimony that she suffered anxiety, depression, headaches, stress, a nervous stomach, sleep disturbances, fatigue, lack of energy, and crying spells. (Id. at 10.) Claimant asserts that the only medical opinion of record regarding mental limitations was that of Dr. Klinestiver, who opined that Claimant's severe depressive disorder limited her ability to concentrate and to complete tasks. (Id.) Nevertheless, she acknowledges that Dr. Klinestiver's office notes "contain little information," but contends that the notes from University Physicians Intern Medicine and Prestera Center for

8

Mental Health Services demonstrate the existence of mental impairments that would adversely affect Claimant's ability to perform work activities. (Id. at 10-12.) Claimant further alleges that in the absence of additional psychiatric or psychological evidence, the ALJ improperly substituted his opinions for that of a trained professional. (Id. at 12.)

The Commissioner asserts that substantial evidence supports the ALJ's decision that Claimant did not have a severe mental impairment. (Document No. 9 at 12-15.) The Commissioner points out that Claimant neither had been hospitalized for a mental impairment, nor received any treatment from a psychiatrist or psychologist. (Id. at 13.) Claimant reported that her activities of daily living were not significantly restricted due to a mental condition and the evidence revealed that such activities were not affected by a mental condition. (Id. at 13-14.) The Commissioner notes that in November, 2006, Claimant advised Dr. Dumapit that though she had a mental condition, it was not bad enough to seek treatment. (Id. at 13.) However, on July 6, 2007, three months prior to the administrative hearing, Claimant conversely reported that she had felt depressed for three years. (Id.) In August, 2007, she complained of depression, increased anxiety, and anhedonia for two years, but that the symptoms had worsened the last two months. (Id. at 14.) Nevertheless, Claimant admitted that she was not taking the prescribed antidepressant, Cymbalta. (Id.) Though Claimant attempts to rely on Dr. Klinestiver's opinion that Claimant suffered a severe depressive disorder that affected her ability to concentrate, his opinions, as Claimant conceded, completely were void of any rationale. (Id. at 14-15.) The Commissioner further asserts that contrary to Claimant's allegation, the ALJ did not "play doctor" in determining that Claimant did not have a severe mental impairment. (Id. at 15.) The Commissioner asserts that "the ALJ was simply performing her function when she evaluated the medical evidence in this case." (Id.) Accordingly, the Commissioner asserts that

9

Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Id.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2007). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

The evidence regarding Claimant's mental impairments for the relevant period of time, from March 1, 2005, through November 7, 2007, reveals that on April 25, 2006, Dr. Stanley S. Tao, M.D., reported that Claimant denied memory loss, high stress levels, depression, sleep disturbance, suicidal ideation, and panic attacks. (Tr. at 185-86.) On November 6, 2006, Claimant reported to Dr. Ruperto D. Dumapit, M.D., on consultative examination that she was stressed, nervous, and worried about

health problems all the time. (Tr. at 209.) She denied suicidal ideation and reported that she used to be active socially, but then preferred to stay at home due to her medical problems. (Id.) Claimant also reported that "her mental condition is not bad enough to seek treatment." (Id.) On examination, Claimant maintained good eye contact. (Tr. at 212.) Denise Smith, M.A., a licensed psychologist, of Prestera Mental Health Center, completed an adult psychosocial history on Claimant on July 6, 2007. (Tr. at 334-38.) Claimant reported feelings of depression, uselessness, crying spells, frequent worry, loss of interest and pleasure in activities, self-neglect, fatigue, low energy levels, sleep disturbance, and poor concentration. (Tr. at 334.) Contrary to her prior statements, Claimant reported that these symptoms all had a prior onset date of three years. (Id.) She indicated activities to include dancing and listening to music. (Tr. at 337.) On mental status exam, Claimant maintained good eye contact, presented with a depressed mood and broad affect, reported insomnia, denied suicidal and homicidal ideation, had average intellectual functioning, exhibited normal perception, and had fair insight and judgment. (Tr. at 338.) Ms. Smith diagnosed major depressive disorder, single, moderate; generalized anxiety disorder; and a Global Assessment of Functioning ("GAF") of 60.[3] (Id.)

On July 24, 2007, Claimant's treating physician, Donald Klinestiver, M.D., completed a Medical Assessment of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant's ability to maintain concentration for the completion of work-related activities was affected by her severe depressive disorder. (Tr. at 321.) On August 9, 2007, Jawaid Latif, M.D., of Prestera Mental Health Center, completed a comprehensive diagnostic psychiatric evaluation. (Tr.

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has some moderate symptoms or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

11

at 339-41.) Claimant reported a difficult time dealing with the changes in her life, noting that she recently had moved 100 miles to be closer to her family and on the insistence of her husband. (Tr. at 339.) She reported that she had not adjusted well to her new environment and that she could not socialize with the people in her new community. (Id.) She further reported decreased sleep and appetite, tiredness, increased anxiety, anhedonia, and was tearful throughout the interview. (Tr. at 339-40.) However, Claimant denied suicidal and homicidal ideation, as well as hallucinations, delusions, or paranoia. (Tr. at 340.) She reported that her family physician had prescribed Cymbalta but that she had not been taking it. (Id.) Claimant denied any psychiatric hospitalizations or treatment, and reported being ashamed of being depressed. (Id.) On mental status exam, Dr. Latif noted that Claimant had normal psychomotor activity, described her mood as depressed and anxious, was tearful throughout the interview, made lots of complaints about her situation, was not able to see reality, was alert and oriented, and had good insight and intact judgment. (Tr. at 341.) He diagnosed major depression with prominent anxiety symptoms and a GAF of 60. (Id.) Treatment included supportive psychotherapy, Effexor, and a recommendation that she undergo individual counseling for anxiety symptoms. (Id.)

At the administrative hearing, Claimant testified that she experienced anxiety and depression, for which she took Cymbalta and Effexor. (Tr. at 388, 392.) She testified that she had never been hospitalized for any mental condition. (Tr. at 391.) Claimant indicated that she did not sleep well, never felt rested, and lacked energy. (Tr. at 396, 398.) She testified that she had crying spells all the time, even when home alone. (Tr. at 398.) Regarding her activities of daily living, Claimant testified that she watched television, paid bills with the assistance from her sister and niece, could balance a checking account, prepared breakfast, laid in a chair a lot during the day, and was able to manage

her personal care, with the exception of styling her hair, shaving her legs, and putting on tops with her arms overhead. (Tr. at 397-401.)

On a form Function Report - Adult, dated January 28, 2006, submitted in connection with her application for benefits, Claimant reported that she prepared easy meals, did light household chores and laundry, drove, shopped, could pay bills and manage bank accounts, and could count change. (Tr. at 84-87.) Regarding social activities, Claimant reported that she primarily spent time with her family, read, watched television, and played board games, all on a daily basis. (Tr. at 88.) She reported that she had no problems maintaining attention, and in response to how well she followed instructions, she indicated that she had "no mental difficulty." (Tr. at 89.) Claimant further reported that she did not have any problems getting along with family, friends, or neighbors. (Id.) On February 9, 2007, Claimant reported that she occasionally used a computer and spent time reading newspapers and magazines. (Tr. at 159.)

In her decision, the ALJ summarized the evidence of record, including the above-referenced medical records from Dr. Tao, Prestera Mental Health Center, and Dr. Latif, as well as Claimant's testimony and self-reports. (Tr. at 17-23.) The ALJ determined that Claimant did not have a severe psychiatric impairment that met the durational requirements of the Social Security Act and Regulations. (Tr. at 18.) In so finding, the ALJ concluded that Claimant's mental impairments resulted in no more than mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild limitations involving concentration, persistence, or pace. (Tr. at 19.) The ALJ noted that Claimant had not required "consistent psychiatric treatment or psychiatric hospitalizations." and that she had the "mental functional ability to understand, carry out, and remember instructions and job tasks." (Id.) She further noted Claimant's January, 2006, report that

she had no mental problems. (Tr. at 19, 89.) Based on the foregoing, the undersigned finds that the record fails to establish any significant limitations on Claimant's ability to perform basic work-like activities, and therefore, that the ALJ's decision that Claimant's mental impairments were non-severe impairments is supported by substantial evidence of record.

Regarding Dr. Klinestiver's opinion, the undersigned further finds that the ALJ properly accorded little weight to the July 24, 2007, opinion of Dr. Klinestiver that Claimant had a severe depressive disorder that affected her ability to concentrate sufficiently to complete tasks. (Tr. at 23, 321.) The ALJ correctly noted that Dr. Klinestiver's assessment was a fill-in-the blank form and that he failed to provide any medical findings to support his conclusions. (Tr. at 23.) Additionally, the undersigned finds that the ALJ did not play doctor and substitute his opinion for that of a medical opinion. The evidence failed to establish the existence of a severe mental impairment, and therefore, the ALJ was not required to accept Dr. Klinestiver's assessment. This action was not that of substituting the ALJ's opinion for a medical opinion, but that of rejecting a conclusory and unsupported medical opinion. Accordingly, the undersigned finds that Claimant's arguments in these regards are without merit and that substantial evidence supports the ALJ's decision.

2. RFC Assessment.

Claimant next argues that the ALJ erred in assessing Claimant's RFC when she failed to include any limitations in her RFC determination regarding Claimant's severe shoulder tendonitis and when she failed to accord proper weight to the opinion of Claimant's treating physician, Dr. Klinestiver. (Document No. 8 at 13-18.) Claimant notes that the VE testified that there would be no jobs that Claimant could perform if she were as limited as noted by Dr. Klinestiver. (Id. at 13.) Thus, if proper weight had been accorded Dr. Klinestiver's opinion, Claimant contends that a finding of

disability would have been rendered. (Id.) Though Dr. Klinestiver's progress notes contained very little information, Claimant asserts that the ALJ could have re-contacted him to determine whether additional information was available before rejecting his opinion. (Id. at 14.) In rejecting Dr. Klinestiver's opinion, Claimant asserts that the ALJ failed to consider properly her fibromyalgia and associated limitations, despite finding the condition as a severe impairment. (Id. at 15.)

The Commissioner asserts that Dr. Klinestiver's opinion was not entitled to great weight. (Document No. 9 at 16.) The Commissioner notes that an opinion on Claimant's RFC is reserved to the Commissioner and that an opinion on Claimant's ability to work is not entitled to any special deference. (Id.) Dr. Klinestiver's opinion was not substantiated with any medical findings to support his conclusions, or any rationale or explanation for his conclusions. (Id.) Despite Dr. Klinestiver's longstanding relationship with Claimant, his treatment notes did not reflect any detailed or informative picture of Claimant's impairments. (Id. at 17.) Though Claimant asserts that the ALJ should have re-contacted Dr. Klinestiver, the Commissioner asserts that the ALJ found the evidence was sufficient to make a determination without re-contacting him. (Id.) The Commissioner notes that the opinions and findings of Drs. Beard, Ratliff, Tao, Dumapit, Hatfield, and the state agency physicians, as well as the findings from a brain MRI scan and carotid duplex study showed no abnormalities. (Id.) Drs. Obeidat and Oley reported that Claimant's fibromyalgia, hypertension, and hypothyroidism all were under control. (Id. at 18.) The Commissioner further notes that Claimant denied any problems with fibromyalgia in May, 2007. (Id.) This statement is supported by the opinions of Drs. Beard, Ratliff, Tao, Dumapit, Hatfield, and the state agency physicians, all of whom found that Claimant had no functional limitations that precluded her from working. (Id.)

The Commissioner further asserts that Claimant's argument that because her employer insisted that she take breaks to elevate her feet and legs in the last few years of employment, there would be no jobs that she could perform, is misplaced. (Document No. 9 at 19.) The Commissioner asserts that the VE testimony to which Claimant refers was a response to the ALJ's alternative step five inquiry, whether there were other jobs that Claimant could perform. (Id.) In this matter however, the ALJ decided the case at step four, and did not need to make the alternative step five finding. (Id.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2007). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

16

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2007).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2007). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473

(1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).

Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2007). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). Ultimately, it is the

19

responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The medical evidence reveals that on January 31, 2006, David S. Ratliff, M.D., examined Claimant upon referral by Dr. Donald G. Klinestiver, M.D., Claimant's treating physician, for complaints of abdominal pain. (Tr. at 17, 171-73.) On physical examination, Claimant had full range of motion of all extremities without cyanosis or edema, no gross motor or sensory deficits, and a normal gait. (Tr. at 17, 173.) Medical testing revealed that Claimant was positive for Helicobacter pylori infection, for which she was treated with Prevpac and her symptoms resolved. (Tr. at 17, 168, 174.) She also was diagnosed with acute gastritis, a hiatal hernia, and diverticulosis. (Tr. at 17, 169.)

On February 22, 2006, Dr. Kip Beard, M.D., performed a consultative physical examination, at which time Claimant complained of obesity, hypertension, possible diabetes, bilateral leg and shoulder pain, leg swelling, and a thyroid condition. (Tr. at 17, 162.) Claimant reported a ten year history of bilateral shoulder pain with tenderness that was worsened with any repetitious-type activity. (Tr. at 17, 163.) She also reported that her feet and ankle swelling had worsened the last five or six years, and that swelling was increased with any prolonged sitting or weight bearing when her feet were in a dependent position. (Id.) Claimant noted that the swelling made it difficult for her

20

to complete her daily tasks, including housework. (Id.) On examination, Dr. Beard observed that Claimant's gait was normal and that she appeared comfortable when seated, but uncomfortable in supine position. (Tr. at 17, 164.) Examination of Claimant's arms revealed some very mild AC crepitation of the shoulders without pain, tenderness, or swelling. (Tr. at 17, 165.) Dr. Beard noted that Claimant's feet and ankles were non-tender and were neither red, warm, nor swollen. (Tr. at 17, 166.) Dr. Beard observed that Claimant was able to heel, toe, and tandem walk, and could squat, though with a mild degree of difficulty arising from a squat. (Id.) On neurological examination, Claimant had normal sensation and no weakness. (Id.) Dr. Beard diagnosed hypertension, lower extremity swelling, hypothyroidism, osteoarthritis of the bilateral shoulders, bilateral leg pain of uncertain etiology, obesity, hyperglycemia with borderline diabetes by history, and questionable lower extremity peripheral arterial disease by history. (Id.)

On March 8, 2006, Dr. A. Rafael Gomez, a state agency reviewing physician, completed a form RFC Assessment, on which he opined that Claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand, walk, and/or sit for a total of about six hours in an eight-hour workday, and push and/or pull without limitation. (Tr. at 178.) Dr. Gomez also opined that Claimant could perform postural activities occasionally, and should avoid concentrated exposure to vibration and even moderate exposure to hazards. (Tr. at 179, 181.) Dr. Gomez noted that the "examining source," Dr. Beard, gave several diagnoses that were unsupported by the physical findings and were not documented. (Tr. at 182.)

Dr. Stanley S. Tao, M.D., evaluated Claimant for complaints of bilateral shoulder pain and soreness with all activities on April 25, 2006. (Tr. at 17, 185.) Claimant reported that the soreness was increased with all activities and motion and occurred when lying on her involved side. (Id.) She

further reported joint pain and swelling, as well as loss of motion and strength. (<u>Id.</u>) Physical examination revealed limited left shoulder motion due to pain, full strength of the bilateral shoulders, tenderness to palpation of the left shoulder, full range of neck motion, decreased cervical rotation, and right paraspinal cervical and trapezius tenderness. (Tr. at 17, 186-87.) Dr. Tao diagnosed rotator tendonitis and a neck disorder, symptoms not otherwise specified. (Tr. at 17, 187.)

On November 6, 2006, Dr. Ruperto D. Dumapit, M.D., performed a consultative physical examination. (Tr. at 18, 208-14.) Claimant complained of fibromyalgia, hypertension, diabetes, severe leg pain, eye problems, left leg blockage, stress, ankle and leg swelling, bilateral shoulder pain, thyroid problems, stomach pain, arm numbness, and obesity. (Tr. at 18, 208.) Claimant reported that Dr. Klinestiver diagnosed fibromyalgia in 2000, and edema in 1999, indicating that it was secondary to obesity and hypothyroidism. (<u>Id.</u>) Claimant reported that her left leg blockage gradually improved and currently was stable. (Tr. at 18, 209.) She indicated that Dr. Klinestiver recently diagnosed diabetes and that her glucose level was uncontrolled. (<u>Id.</u>) Claimant reported that her chronic stomach problems began in 2005, and were controlled with Prevacid. (<u>Id.</u>) She indicated that she was unable to see without glasses, that her thyroid problems currently were stable, that she regained weight following gastric stapling, and that she was nervous and worried about her health problems constantly. (<u>Id.</u>) Nevertheless, Claimant told Dr. Dumapit that her mental condition did not require her to seek treatment. (<u>Id.</u>)

On physical examination, Claimant exhibited normal neck motion with mild tenderness, exaggerated lordosis and mild tenderness of the lumbosacral region, normal straight leg raising, moderate bilateral shoulder tenderness but normal shoulder range of motion with pain, normal range of elbow motion with mild tenderness, and normal wrist, hand, fingers, hip, and knee range of

motion, but with pain on hip motion. (Tr. at 18, 211.) Neurologic examination revealed slightly diminished upper extremity muscle strength and grip strength but normal fine manipulative testing and lower extremity strength. (<u>Id.</u>) Claimant walked with a cane, favoring her left side and was able to walk in tandem and bend normally. (<u>Id.</u>) She was not however, able to walk on her heels and toes due to pain in her legs and hips, and she refused to hop because of pain. (<u>Id.</u>) Claimant was able to squat partially and was able to arise from a squatting position, could dress and undress, arise from a chair, and get on and off the examining table normally. (<u>Id.</u>) Dr. Dumapit diagnosed fibromyalgia with chronic pain primarily in the shoulders, legs, and arms, accompanied with numbness; tendonitis of the shoulders; hypertension controlled by medications; diabetes under care and controlled; pain in legs, probably secondary to arthritis; eye problems due to error of retraction; history of left leg blockage; hypothyroidism controlled; stomach problems, stable with Prevacid; obesity; and stress. (Tr. at 18, 211-12.)

Dr. Amy Wirts, M.D., another state agency reviewing physician, completed a form RFC Assessment on November 21, 2006, which revealed that Claimant could perform work at the light level of exertion with occasional postural limitations and an avoidance of concentrated exposure to extreme cold and heat, vibration, and hazards. (Tr. at 215-22.)

On May 17, 2007, Claimant was evaluated by Shadi Obeidat, M.D., and Gretchen E. Oley, M.D., at University Physicians Internal Medicine, to establish with a primary care physician and to get a referral for diabetes management. (Tr. at 353-62.) Claimant reported that she had no diabetic complications and that she was trying to improve her diabetes by controlling her diet but could not lose weight due to an inability to increase activity as a result of leg pains. (Tr. at 356.) She further reported that her other problems, including hypertension, fibromyalgia, and hypothyroidism were

under control and stable. (Id.) Claimant was referred to the endocrine clinic to see Dr. Driscoll for diabetes management. (Tr. at 357.)

Claimant treated with Dr. Donald G. Klinestiver from August 18, 1992, through July 24, 2007. (Tr. at 185-87, 191-203, 223-317, 322-25.) From March 1, 2005, through July 24, 2007, Dr. Klinestiver treated Claimant for inter alia, fibromyalgia, diabetes, obesity, hypothyroidism, vertigo, and complaints of shoulder pain. (Id.) On July 24, 2007, Dr. Klinestiver completed a Medical Assessment of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant could lift or carry four pounds, stand or walk for two hours in an eight-hour workday, and sit for one hour in an eight-hour workday. (Tr. at 318-19.) He also opined that Claimant could never perform any postural activities, and that her ability to reach, handle, feel, push, and pull was affected by her impairments. (Tr. at 319-20.) Dr. Klinestiver further opined that Claimant should avoid heights and moving machinery. (Tr. at 320.) Finally, he opined that Claimant's ability to concentrate affected her ability to perform certain activities and that she had a severe depressive disorder. (Tr. at 321.)

On August 27, 2007, R. Mark Hatfield, M.D., performed a retinal consultation. (Tr. at 18, 326-33.) On examination, Claimant's visual acuity was 20/25 in the right eye and 20/30 in the left eye with correction. (Tr. at 18, 327.) Dr. Hatfield diagnosed minimal age-related macular degeneration ("AMD") and type II diabetes without retinopathy. (Tr. at 18, 328.) Dr. Hatfield noted that most all diabetics have fluctuating vision and recommended a computer bifocal, given Claimant's need to work at a computer. (Id.)

As previously noted, the ALJ thoroughly considered and summarized the medical evidence of record. (Tr. at 17-23.) After consideration of all the evidence, the ALJ determined that Claimant retained the RFC for light work which involved limited pushing and pulling with her lower

24

extremities; occasional climbing, balancing, kneeling, crawling, stooping, crouching, and reaching; and an avoidance of unprotected heights, hazardous machinery, temperature extremes, environmental irritants, and climbing ladders, ropes, or scaffolds. (Tr. at 20.) Despite Claimant's assertion to the contrary, the ALJ accommodated Claimant's shoulder tendonitis by limiting her ability to reach on an occasional basis. (Tr. at 20.) Regarding Dr. Klinestiver's opinion, the ALJ acknowledged his opinion, but noted that he completed a fill-in-the blank form and did not provide any medical findings to support his conclusions. (Tr. at 23.) Furthermore, the ALJ found that Dr. Klinestiver's opinion was inconsistent with the other medical evidence of record. (Id.) Particularly, the ALJ noted that in November, 2006, Dr. Dumapit observed that Claimant had normal range of motion in all joints and had only slightly diminished muscle and grip strength in her upper extremities, but normal lower extremity muscle strength and fine manipulative testing. (Id.) The only explanation Dr. Klinestiver offered for his assessments consisted of identifying Claimant's impairments, including multiple symmetrical trigger points, morbid obesity, diabetes mellitus, hypertension, generalized weakness, pain on motion, and neuropathy. (Tr. at 318-20.) As Claimant correctly points out, Dr. Klinestiver's medical notes contained little additional information. Nevertheless, as the Commissioner notes, the other medical evidence of record sufficiently detailed Claimant's physical conditions such that the ALJ did not find it necessary to re-contact Dr. Klinestiver. As discussed above, Claimant reported to Dr. Dumapit and other medical sources that many of her physical conditions, including her fibromyalgia, were stable and Dr. Dumapit and Dr. Ratliff noted that Claimant had full range of motion of all extremities, normal gait and sensation, and had no joint swelling or muscle weakness, with only slightly diminished grip and muscle strength in the upper extremities. (Tr. at 23, 172-73, 211-12.) The opinions of the state agency

physicians, and the other medical sources of record, as evidenced above, did not reflect any significant functional limitations resulting from Claimant's physical limitations that were not accommodated by the ALJ's RFC assessment. Accordingly, the undersigned finds that the ALJ's decision to accord little weight to Dr. Klinestiver's opinion is supported by substantial evidence of record.

3. Combination of Impairments.

Finally, Claimant argues that the ALJ failed to consider the combined effect of Claimant's impairments. (Document No. 8 at 18.) The Commissioner asserts that the ALJ considered Claimant's impairments in combination and that Claimant's argument is without merit. (Document No. 9 at 20.)

The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2007). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

26

The Claimant fails to point to any specific portion of the record or any specific evidence demonstrating that the ALJ failed to consider the severity of Claimant's impairments in combination and "fractionalized" the impairments. (Document No. 8 at 18.) The ALJ clearly noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 16, 19-20.) The ALJ then discussed Claimant's impairments, finding that her osteoarthritis, obesity, diabetes mellitus, shoulder tendonitis, fibromyalgia, and gastritis, were severe impairments. (Tr. at 16-17.) The ALJ specifically found, however, that the record did not reflect that Claimant had "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. at 19.)

Furthermore, the ALJ considered and accounted for Claimant's various impairments in determining Claimant's RFC, restricting her to light work with additional limitations. (Tr. at 20.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job.  20 C.F.R. §§ 404.1545(a), 416.945(a) (2007). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996). As previously noted, the ALJ thoroughly considered and

27

summarized the medical evidence of record. (Tr. at 16-17.) In determining Claimant's RFC, the ALJ found that Claimant should perform only occasional postural activities with limited pushing and pulling with her lower extremities, and should avoid exposure to unprotected heights; climbing ladders, ropes, and scaffolds; hazardous machinery; temperature extremes; or environmental irritants. (Tr. at 20.) These limitations accommodate Claimant's physical impairments. Based on her reported duties as an office manager and the minimal physical limitations identified by the medical evidence, the Court finds that the ALJ's RFC is consistent with the function of an office manager, and therefore, supported by substantial evidence. The ALJ noted that she had considered all of the evidence of record in making her decision. (Tr. at 15.) Accordingly, the undersigned finds that the ALJ considered Claimant's impairments in combination and that substantial evidence supports the ALJ's finding that Claimant did not have a combination of impairments which met or medically equaled a Listing.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** Plaintiff's Motion for Summary Judgment (Document No. 7.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 9.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation

28

within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).  Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: August 31, 2009.

R. Clarke VanDervort
United States Magistrate Judge

29