IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

PATRICIA L. BLODGETT,

      Plaintiff,

v.             CIVIL ACTION NO. 5:08-cv-00284

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**MEMORANDUM OPINION AND ORDER**


   This is an action seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff Patricia Blodgett's application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. This action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission of proposed findings of fact and a recommendation for disposition (PF&R) pursuant to 28 U.S.C. § 636(b)(1)(B). On August 31, 2009, the magistrate judge submitted proposed findings of fact and recommended that the Court deny Plaintiff's Motion for Summary Judgment [Docket 7], grant the Commissioner's Motion for Judgment on the Pleadings [Docket 9], affirm the final decision of the Commissioner, and dismiss this action from the Court's docket. Objections to the PF&R were due by September 18, 2009. Timely objections to the PF&R were filed on September 1, 2009. The briefing is complete, and the matter is now ripe for the Court's consideration.

## *I. STANDARD OF REVIEW*

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the Court must "make a de novo determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). Likewise, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

The Court's review in this case is limited to determining whether the contested factual findings of the Commissioner—as set forth in the decision of his designee, Administrative Law Judge Geraldine H. Page (ALJ)—are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The Social Security Act states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, make determinations as to credibility, or substitute its own judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Rather, the Court must adopt the Commissioner's findings if there is evidence in support of such findings "to justify a refusal to direct a verdict were the case before a jury." *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); *see also Hayes*, 907 F.2d at 1456. Thus, even if the Court would have reached a different decision, it must nonetheless defer to the conclusions of the ALJ if her conclusions are bolstered by substantial evidence and were reached through a correct application of relevant law. *See Coffman*, 829 F.2d at 517.

## II. PLAINTIFF'S OBJECTIONS

Plaintiff raises two objections to the PF&R.[1] Plaintiff contends the ALJ improperly concluded that Plaintiff's mental impairment was not severe. Plaintiff also disputes the ALJ's determination of Plaintiff's residual functional capacity. Each of these objections will be afforded de novo review.

    *A.    Severity of Mental Impairment*

The assessment of whether a claimant has severe impairments is the second step of the sequential five-step analysis of disability claims provided for in 20 C.F.R. §§ 404.1520, 416.920. Severe impairments are impairments which, singly or in combination, "significantly limit[] [a

---

[1] The full factual and procedural background of this case is set forth in the PF&R.

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 404.920(c). "Basic work activities" include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 404.1521(b). "An impairment can be considered 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Evans v. Hecker*, 734 F.2d 1012, 1015 (4th Cir. 1984) (emphasis omitted).

Like physical impairments, mental impairments are considered severe only if they "significantly limit[] . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Assessing the degree of a claimant's limitation is a "complex and highly individualized process" which must take into account all relevant evidence bearing on the claimant's mental condition. *Id*. § 404.1520a(c)(1). In this context, relevant evidence includes "clinical signs and laboratory findings, the effects of [a claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id*. Severity is determined by evaluating the evidence in light of four categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).

The ALJ made the following conclusions in regard to the severity of Plaintiff's mental impairment:

4

> The undersigned [ALJ] finds that [Plaintiff] does not have any medically determinable "severe" psychiatric impairment that has met the duration requirements of the Social Security Act and Regulations. There is also no evidence of more than mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild limitation involving concentration, persistence, or pace. She has not required consistent psychiatric treatment or psychiatric hospitalizations. The claimant has the mental functional ability to understand, carry out, and remember instructions and job tasks. In January 2006, the claimant indicated that she had no mental problems. In April 2006, Dr. Tao noted that claimant had no depression or anxiety attacks.

(Tr. 18–19 (citations omitted).)

Plaintiff objects to the ALJ's conclusions, arguing that the ALJ rejected the only medical opinion of record regarding Plaintiff's mental impairment and that the ALJ substituted her opinion of the nature of Plaintiff's mental impairments for that of the medical experts. In particular, Plaintiff faults the ALJ for giving little weight to the opinion of her treating physician, Dr. Donald Klinestiver. Dr. Klinestiver noted on July 27, 2007, that Plaintiff would have difficulty performing work-related activities due to a lack of "concentration for completion of tasks" and "severe depressive disorder." (Tr. 321.) The ALJ declined to credit the physician's assessment because Dr. Klinestiver did not cite medical findings to support his conclusions about Plaintiff's mental impairment and his conclusions were inconsistent with the medical record. (Tr. 23.)

In addition to the testimony of Dr. Klinestiver, Plaintiff highlights portions of her testimony before the ALJ as further evidence of severe mental impairment. Plaintiff testified that she is receiving treatment for anxiety and depression and that the medications she is prescribed make her sleepy and groggy. (Tr. 388, 396.) She also testified that she suffers from headaches secondary to stress (Tr. 397–98); that she has a nervous stomach (Tr. 395); that she sometimes does not care if she gets out of bed in the morning (Tr. 397); that she experiences sleep disturbances (Tr. 390, 394,

5

396); that she suffers fatigue and lack of energy (Tr. 398); and that she undergoes crying spells (Tr. 398).

Under the deferential standard mandated by 42 U.S.C. § 405(g), the findings of the Commissioner are not to be disturbed if there is substantial evidence in the record to support those findings. It is not appropriate for this Court to weigh the evidence de novo. There may be, as Plaintiff highlights, evidence in the record that arguably could support a finding of severe impairment with regard to Plaintiff's depression and anxiety. However, the inquiry is not whether Plaintiff's position enjoys the support of substantial evidence; the question is whether the ALJ's decision is supported by substantial evidence. A review of the record in this case reveals that there is substantial evidence to support the ALJ's conclusion that Plaintiff's mental impairment was not severe.

A disability determination evaluation by Dr. Ruperto Dumapit on November 6, 2006, supports the ALJ's conclusion that Plaintiff's mental impairment may not have been as severe as reported by Dr. Klinestiver or as stated in Plaintiff's testimony. In his report, Dr. Dumapit noted that Plaintiff complained of stress and nervousness but that she "stated that her mental condition is not bad enough to seek medical treatment." (Tr. 209.) He also recorded that Plaintiff reported "[n]o history of malaise or fatigue" and that she could "manage her finances." (Tr. 210.) At the evaluation, Plaintiff appeared "clean, neat, and well-groomed," "alert, and oriented to time, place, and person," and "pleasant." (Tr. 210.)

Dr. Stanley Tao evaluated Plaintiff for pain-related symptoms on April 25, 2006. Dr. Tao's report is inconsistent with the findings of Dr. Klinestiver and with Plaintiff's testimony. Dr. Tao's notes reflect that Plaintiff reported no problems with headaches, memory loss, nausea, or fatigue.

(Tr. 267–68.) Plaintiff also reported no psychological problems with stress, depression, panic attacks, or sleep disturbances. (Tr. 268.)

In late 2007, Plaintiff underwent evaluation at the Prestera Center for Mental Health Services. Plaintiff was evaluated by psychologist Dr. Denise Smith on July 6 and by psychiatrist Dr. Jawaid Latif on August 9. Plaintiff was diagnosed primarily with Major Depressive Disorder Single Episode Severe and secondarily with Generalized Anxiety Disorder. (Tr. 341, 344.) Plaintiff's diagnoses, without more, are not especially probative of her level of impairment. A better indicator of Dr. Smith and Dr. Latif's opinions of Plaintiff's level of impairment is the score they gave Plaintiff on the Global Assessment of Functioning (GAF) scale.[2] A GAF score reflects a "clinician's judgment of the individual's overall level of . . . psychological, social and occupational functioning." Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994) (DSM-IV). Plaintiff was given a GAF score of 60 by Dr. Smith and Dr. Latif. (Tr. 341, 344.) A score in the range of 51 to 60 corresponds with "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, and school functioning (e.g., few friends, conflicts with peers or coworkers)." DSM-IV 32. Plaintiff's GAF score of 60 is at the high end of the this range, bordering on the range of 61 to 70, which indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful relationships." *Id*.

---

[2] A claimant's GAF score does not directly correlate with a level of mental impairment under the Social Security Administration's regulations, but GAF scores have been recognized as useful sources of functional information. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,764–65 (Aug. 21, 2000).

Additional insight into the extent of Plaintiff's mental impairment can be gleaned from the details of the reports of Dr. Smith and Dr. Latif. Plaintiff reported suffering depression and other mental health problems that had persisted for approximately three years, (Tr. 334), but none were severe enough for her to seek psychiatric treatment, (Tr. 340). She also listed dancing and listening to music as leisure activities, and she identified her friendship and family connections as "friendly, social." (Tr. 337.) Dr. Smith noted that Plaintiff's affect, hygiene, sensorium, attitude, impulse control, and intellectual function were all normal. (Tr. 337–38.) Slight problems were noted in Plaintiff's attention span, which was categorized as "distractible," and in her insight and judgment, which were listed as "fair." (*Id*.) Plaintiff reported no suicidal or homicidal ideations. (Tr. 338.) In a section concerning the "Level of Assistance the [Plaintiff] requires," Dr. Smith noted that Plaintiff required no assistance to "Maintain Relationships," "Self Administer Medications," and "Maintain Personal Safety," and "Access Other Services (transportation, recreation, etc.)." (Tr. 346.) Plaintiff required only "Minimal Assistance" for "Activity of Daily Living." (*Id*.) Plaintiff also reported having a prescription for the antidepressant drug Cymbalta, but that she did not take the drug. (Tr. 340.) Dr. Latif prescribed the antidepressant Effexor and scheduled a follow-up appointment with Plaintiff. (Tr. 341.)

Plaintiff relies heavily on the report of Dr. Klinestiver, (Tr. 318–21), to support her argument that she suffers from a severe mental impairment. As a treating source who has treated Plaintiff for roughly fifteen years, Dr. Klinestiver's opinion is entitled to substantial weight. *See* 20 C.F.R. §§ 404.1527(d); 416.927(d). Dr. Klinestiver's report contains a diagnosis of major depression and a notation stating that Plaintiff's work-related function may be impaired by a lack of "concentration for completion of tasks." The report gives little indication of the degree of Plaintiff's mental

impairment. Dr. Klinestiver's findings were given little weight by the ALJ because they were unelaborated and unsupported by other evidence in the record. The weight the ALJ gave to Dr. Klinestiver's opinion regarding Plaintiff's mental impairment is largely irrelevant, however, because Dr. Klinestiver's findings are generally consistent with the findings Dr. Smith and Dr. Latif. All three doctors diagnosed Plaintiff with depression, (Tr. 321, 338, 341), and both Dr. Klinestiver and Dr. Smith noted that Plaintiff suffered from deficiencies in concentration, (Tr. 321, 337). Unlike the report of Dr. Klinestiver, however, the reports of Dr. Smith and Dr. Latif are more detailed and give insight to the degree of Plaintiff's mental impairment.

Dr. Smith and Dr. Latif's reports contain information relevant to the criteria the Social Security Administration uses to assess the severity of an impairment. *See* 20 C.F.R. § 404.1520a(c)(3). Their reports indicate that Plaintiff has only non-severe impairment in activities of daily living and concentration, persistence, and pace. Little or no impairment was found with regard to Plaintiff's social functioning. There is no evidence the Plaintiff experienced any episodes of decompensation. Moreover, these findings are largely consistent with the findings and notations of Dr. Dumapit and Dr. Tao. They are also generally consistent with written statements by Plaintiff on the record that she had "no problem with attention span," "no mental difficulty," "no problem" following oral or written directions, and no difficulty with memory or getting along with others. (Tr. 89.) Accordingly, the Court **FINDS** that the ALJ's finding that Plaintiff's mental impairment was not severe is supported by substantial evidence.

    B.    *Residual Functional Capacity*

Residual Functional Capacity (RFC) is a determination of a claimant's capabilities, after accounting for her impairments, which occurs at step four of the five-step sequential evaluation of

disability claims. *See* 20 C.F.R. § 416.945(a)(1); *see also* Social Security Ruling (SSR) 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34474 (July 2, 1996) ("RFC represents the most that an individual can do despite his or her limitations or restrictions."). RFC takes into account both physical and mental impairments that may limit the claimant's work-related abilities. *See* 20 C.F.R. § 416.945(b)–(c). All relevant evidence—medical, observational, and subjective—must be considered. *See id.* § 416.945(a)(3).

Though the ALJ considers each of the medical opinions, the determination of a claimant's RFC is ultimately the province of the ALJ as the representative of the Commissioner. 20 C.F.R. § 404.1527(e)(2); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). A reviewing court's sole responsibility is to determine whether the ALJ's determination of the claimant's RFC is rational and based on substantial evidence. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

The ALJ found:

> [Plaintiff] has the residual functional capacity to perform light work, i.e., lifting/carrying no more than 20 pounds occasionally, 10 pounds frequently; standing/walking no more than 6 hours in an 8 hour day; sitting no more than 6 hours in an 8 hour day with limited pushing and pulling wither her lower extremities; occasional climbing, balancing, kneeling, crawling, stooping, crouching, and reach; with no exposure to unprotected heights, climbing ladder, ropes, and scaffolds, hazardous machinery, temperature extremes, or environmental irritants.

(Tr. 20.) Based on these findings, the ALJ determined that Plaintiff could return to her past relevant work as an office manager. (Tr. 23.) Plaintiff objects to the ALJ's RFC determination in several respects: the ALJ failed to properly credit the opinion of Dr. Klinestiver; the ALJ did not account for Plaintiff's severe shoulder tendinitis in her determination of Plaintiff's limitations; the ALJ did not consider Plaintiff's fibromyalgia; and the ALJ did not account for the assertion that Plaintiff must elevate her legs several times a day. Each of these objections will be addressed.

*(1)     Weight Given to Treating Physician's Opinion*

When deciding the weight to give each medical opinion, the ALJ takes into account the following factors: (1) whether the source has examined the claimant and the length and frequency of the examinations; (2) the nature and extent of relationship with a treating physician; (3) supportability; (4) consistency; (5) specialization; and (6) various other factors. 20 C.F.R. § 404.1527. Generally, more weight is given to examining sources than to sources who do not examine. 20 C.F.R. § 404.1527(d)(1). Similarly, more weight is given to treating sources than to examining sources. 20 C.F.R. § 404.1527(d)(2). Under the so-called treating physician's rule, the opinion of a claimant's treating physician should given great weight. *Mitchell v. Schweiker,* 699 F.2d 185, 187 (4th Cir. 1983); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Notwithstanding the deference afforded to the opinion of a treating physician, the physician's opinion will be afforded controlling weight only if two conditions are met: "(1) . . . it is supported by clinical and laboratory diagnostic techniques and (2) . . . it is not inconsistent with other substantial evidence." *McPherson v. Astrue*, 605 F. Supp. 2d 744, 773 (S.D. W. Va. 2008) (Johnston, J.) (quoting *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996)).

Plaintiff faults the ALJ for failing to properly credit the report of Plaintiff's longstanding treating physician, Dr. Klinestiver. Dr. Klinestiver opined that Plaintiff could lift and carry a maximum of four pounds no more than two hours out of an eight-hour workday. (Tr. 318.) Dr. Klinestiver found that in an eight-hour workday Plaintiff could stand or walk no more than two hours and sit for no more than one hour. (Tr. 319.) Dr. Klinestiver reported that Plaintiff could "never" climb, balance, stoop, crouch, kneel, or crawl in a work environment. (*Id*.) He further noted impairments in Plaintiff's ability to reach for, handle, feel, push, or pull objects. (Tr. 320.)

In support of his opinions, Dr. Klinestiver cited "multiple trigger points, morbid obesity, diabetes mellitus, hypertension, peripheral neuropathy," (Tr 318), "generalized weakness," and pain (Tr. 320).

The ALJ "assign[ed] very little weight" to Dr. Klinestiver's opinions because he "completed a fill-in-the blank form and did not provide medical findings to support his conclusions" and because the "report is inconsistent with the medical record." (Tr. 23.) The ALJ highlighted other medical evidence in the record from Dr. Dumapit and Dr. David Ratliff that was inconsistent with Dr. Klinestiver's findings.

Dr. Dumapit performed a disability determination evaluation of Plaintiff on November 11, 2006. Plaintiff exhibited a normal range of motion in her shoulders, (Tr. 213), albeit with some pain, (Tr. 211). Plaintiff's shoulders had no swelling or deformities. (*Id*.) With the exception of "mild tenderness" in her elbows, Plaintiff's elbows, wrists, hands, and fingers were unremarkable. (Tr. 211, 213.) Plaintiff scored 4 on a scale of 1 to 5 for upper extremity strength and grip strength. (Tr. 213.) Plaintiff's fine motor skills were normal. (*Id*.) Plaintiff's hips and knees exhibited a normal range of motion, although Plaintiff experienced some pain when they were flexed. (Tr. 211.) No problems were found with Plaintiff's ankles. (*Id*.) Plaintiff walked with a cane, but she could tandem walk and bend normally. (*Id*.) She could squat partially and rise, dress and undress, get up from a chair, and get on and off the examining table normally. (*Id*.) Dr. Dumapit's summary noted that Plaintiff's medications gave her temporary relief from pain, that Plaintiff's hypertension was under control with medication, that the swelling in her ankles and legs was likely a result of hyperthyroidism and was under control with medication, that her stomach problems were stable due to medication, and that she was seeking treatment for her eye problems. (Tr. 212.)

Dr. Ratliff examined Plaintiff on January 31, 2006, for stomach pains. His examination report notes that Plaintiff had a full range of motion in all extremities, no gross motor or sensory deficits, no muscle weakness, and normal gait. (Tr. 172–73.)

In addition to the reports of Dr. Dumapit and Dr. Ratliff cited by the ALJ, other evidence supports the ALJ's conclusion that Dr. Klinestiver's assessment of Plaintiff's RFC was inconsistent with other evidence in the record. Dr. Kip Beard examined Plaintiff on February 6, 2006. Dr. Beard's observations of Plaintiff reflected that her gait was normal, that she was able to sit and rise without difficulty, that she could stand without assistance, and that she appeared to be comfortable while sitting. (Tr. 164.) Dr. Beard's examination of Plaintiff's arms, hands, knees, ankles and feet noted some crepitation (i.e., cracking noises) but was otherwise unremarkable. (Tr. 165–66.) Plaintiff could stand on one leg without difficulty, heel walk, toe walk, and tandem walk. (Tr. 166.) She exhibited only a "mild degree of difficulty" rising from a squat. (*Id.*)

Dr. Tao evaluated plaintiff on April 25, 2006, for shoulder pain. His examination revealed limited left shoulder motion due to pain, full strength of the bilateral shoulders, tenderness to palpation of the left shoulder, full range of neck motion, decreased cervical rotation, and right paraspinal cervical and trapezius tenderness. (Tr. 186–87.) Plaintiff was diagnosed with rotator tendinitis. (Tr. 189.) Dr. Tao discussed treatment options with Plaintiff and scheduled a follow-up appointment but there is no record of additional treatment or appointments with Dr. Tao. (Tr. 190.)

Dr. A. Rafael Gomez performed a RFC assessment of Plaintiff on March 8, 2006. Dr. Gomez stated, "The physical exam is normal except for morbid obesity level III, crepitus in both shoulders and knees, mild edema of the legs and excoriations in the anticubital areas." (Tr. 182.) Dr. Gomez concluded, "She is reduced to light work, mainly on the basis of her obesity." (*Id.*) Dr.

Gomez also noted that Plaintiff's claimed medical problems were not supported by his physical findings. (*Id*.) Dr. Gomez's determination of Plaintiff's RFC is identical to that of the ALJ, with the exception of the list of environmental limitations. (Tr. 181.) Dr. Gomez's RFC determination contains fewer restrictions on the hazards to which Plaintiff could be exposed in a work environment than does the ALJ's RFC determination.

A second RFC evaluation was performed by Dr. Amy Wirts on November 21, 2006. Like the ALJ and Dr. Gomez, Dr. Wirts found that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk six hours out of an eight-hour workday, and sit six hours out of an eight-hour workday. (Tr. 216.) Dr. Wirts also found that Plaintiff could, occasionally, climb, balance, stoop, kneel, crouch, and crawl. (Tr. 217.) Dr. Wirts' evaluation of Plaintiff's environmental limitations, like Dr. Gomez's evaluation, were less generous to Plaintiff than the ALJ's findings. (Tr. 219.)

It is evident from the record that the ALJ did not err in holding that Dr. Klinestiver's opinion should not be afforded controlling weight. As the ALJ noted, Dr. Klinestiver's RFC determination was entered on a fill-in-the-blank form and was not supported by clinical and laboratory diagnostic findings. Furthermore, Dr. Klinestiver's findings were not consistent with the findings of Drs. Dumapit, Ratliff, Beard, Tao, Gomez, and Wirts. It was therefore appropriate for the ALJ to discount the opinion of Dr. Klinestiver. *Cf. McPherson*, 605 F. Supp. 2d at 773. Accordingly, the Court **FINDS** that the ALJ's decision to give little weight to Dr. Klinestiver's medical opinion is supported by substantial evidence.

### *(2) Limitations Caused by Severe Shoulder Tendinitis and Fibromyalgia*

Plaintiff contends that the ALJ failed to incorporate any limitations from Plaintiff's severe shoulder tendinitis and fibromyalgia into his RFC determination. These objections need not occupy the Court for long, however, as the arguments are dependent on controlling weight being afforded to Dr. Klinestiver's opinion. Dr. Klinestiver found that Plaintiff could lift no more than four pounds with her arms and that she could never perform postural activities. (Tr. 318.) Although the ALJ found that Plaintiff's shoulder tendinitis and fibromyalgia were severe impairments, (Tr. 19), she rejected Dr. Klinestiver's assessment of Plaintiff's degree of functional impairment. The ALJ determined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. 20.) The ALJ also found that Plaintiff could use her arms to push, pull, and reach, although these activities were limited. (*Id.*) Plaintiff could occasionally perform postural tasks according to the ALJ. (*Id.*) As discussed in detail above, the ALJ's decision relied on the opinions of Drs. Dumapit, Ratliff, Beard, Tao, Gomez, and Wirts, all of whom gave medical opinions concerning Plaintiff's functional abilities that were markedly less limited than that of Dr. Klinestiver. Because the Court has previously found that the ALJ did not err in crediting the medical evidence of Drs. Dumapit, Ratliff, Beard, Tao, Gomez, and Wirts, the Court **FINDS** that the ALJ's RFC determination is supported by substantial evidence.

### *(3) Vocational Limitation of Elevating Legs*

Plaintiff argues that the ALJ failed to consider the opinion of Plaintiff's former employer, Jack Donta, who remarked in a letter to the Social Security Administration, "I insisted that she [Plaintiff] take breaks and try to elevate her feet and legs at sometime during the day." (Tr. 113.) In response to a hypothetical posed at Plaintiff's hearing before the ALJ, the Vocational Expert

testified that Plaintiff would not be able to perform her past relevant work if she had to elevate her legs several times a day. (Tr. 405.)

Donta is an "other source" as defined in the regulations at 20 C.F.R. §§ 404.1513(d) and 416.913(d). Therefore, Donta's opinion may be considered by the ALJ, but is "entitled to significantly less weight" than the medical evidence in the record. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Donta's statement that Plaintiff was encouraged elevate her legs several times a day while in his employment reflects his opinion about what Plaintiff should have done to relieve the symptoms of which she complained. The statement is not supported by, or consistent with, the medical evidence in the record, however. The Court accordingly **FINDS** that the ALJ's decision to give no weight to Donta's opinion is supported by substantial evidence.

## III. CONCLUSION

For the reasons set forth above, the Court **ADOPTS** Magistrate Judge VanDervort's PF&R [Docket 10], **DENIES** Plaintiff's Motion for Summary Judgment [Docket 7], **GRANTS** the Commissioner's Motion for Judgment on the Pleadings [Docket 9], **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action from the Court's docket. A separate Judgment Order will enter this day implementing the rulings contained herein.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:       September 22, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE